**SIGNED THIS: November 20, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KIM E. PHILLIPS and MARY M. PHILLIPS, | ) | No. 05-87521 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| 1st FARM CREDIT SERVICES, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 06-8123 |
| | ) | |
| KIM E. PHILLIPS and MARY M. PHILLIPS, | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| RICHARD BARBER, as Trustee of the Estate of PHILLIPS FARMS, INC., COLCHESTER STATE BANK, STATE BANK OF AUGUSTA, DEERE AND COMPANY, JOHN DEERE CREDIT COMPANY, CNH CAPITAL AMERICA, LLC, PAT RIGGINS, R. STEPHEN HUNT, and BIRKEY'S FARM STORE, INC., | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N**

This matter is before the Court on the Motion for Summary Judgment filed by one of the Defendants, CNH Capital America LLC ("CNH"). In its Second Amended Complaint filed February 16, 2007, the Plaintiff, 1st Farm Credit Services, PCA, makes two allegations against CNH, both in Count III. First, the Plaintiff challenges whether CNH perfected its purchase money security interest in a Case 9370 Tractor. Second, the Plaintiff seeks judgment against CNH for $24,850.10, the trade-in value of a Case 9330 Tractor in which Plaintiff claims a lien.

**BACKGROUND**

Kim Phillips ("KIM") has farmed for many years and has a long-term borrowing relationship with Plaintiff. Pursuant to that relationship, Plaintiff has maintained a blanket lien on KIM's assets, including equipment, which is a non-purchase money security interest. The Defendant, Birkey's Farmstore, Inc. (BIRKEY'S), is a retail dealer of Case IH farm equipment. CNH is a finance company that provides funding to buyers of equipment from Case dealerships, including BIRKEY'S.

Prior to April 30, 2002, KIM owned a Case IH Tractor, model 9330 (the "9330"). The 9330 was subject to a purchase money lien in favor of CNH (or its predecessor, Case Credit) as well as the blanket security interest of Plaintiff. On April 30, 2002, KIM traded in the 9330 and purchased from BIRKEY'S a Case IH Tractor, model 9370 (the "9370"), with financing provided by CNH.

KIM entered into a Retail Installment Sale Contract and Security Agreement (the "Contract") with BIRKEY'S that evidenced the purchase and the terms of the financing, which was immediately assigned to Case Credit. The Contract reflects a gross trade-in

2

value on the 9330 of $70,000, a payoff amount on the purchase money lien to CNH of $45,149.90, and a net trade-in allowance of $24,850.10, which is credited against the $90,000 cash sale price of the 9370.

On May 10, 2002, CNH caused to be filed with the Illinois Secretary of State a UCC-1 financing statement identifying KIM as the Debtor and the collateral as a Case IH 9370 Tractor, Ser. No. JEE0035153. The financing statement clearly meets the requirements for perfection set forth in 810 ILCS 5/9-501 *et. seq.* In its response to the Motion, the Plaintiff does not contest the perfection of CNH's lien in the 9370. Under 810 ILCS 5/9-324, a perfected purchase money security interest in equipment has priority over a conflicting security interest. CNH's lien in the 9370 has priority over that of Plaintiff.

The Plaintiff's argument that CNH owes it $24,850.10 is wholly undeveloped. In its brief, Plaintiff asserts that either CNH or BIRKEY'S "received the proceeds from the sale of the Case IH four wheel drive 9330 tractor for which the Debtors received a net trade-in allowance of $24,850.10." Plaintiff argues that the factual issue as to who received the proceeds precludes the entry of summary judgment in favor of CNH.

With its Motion, CNH submitted the affidavit of Paul Lukridge, the High Risk/Bankruptcy Manager of CNH. Lukridge states that at the time of the trade-in, CNH was owed $45,149.90 on the loan secured by the 9330. He states that CNH did not receive any portion of the net trade-in allowance of $24,850.10. He also states that CNH did not own or have control over the 9330.

These facts are set forth in a sworn affidavit. In order to create a disputed question as to any of these facts, it is incumbent upon the Plaintiff to produce contrary evidence.

3

After a movant makes a properly supported summary judgment motion, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The nonmovant may not rely on the allegations in its pleadings to establish a genuine issue of fact, but must come forward with an affirmative showing of evidence. *Id.*

The Plaintiff has failed to produce any evidence. Its sole effort to controvert the Lukridge affidavit is to argue that the Contract itself evidences a possible payment to CNH of $24,850.10. This argument is contradicted by the Lukridge affidavit and is not supported by the terms of the Contract.

The Plaintiff appears to assume that the trade-in of the 9330 generated cash proceeds. Nothing in the Contract document supports that assumption. Instead, the Contract reflects that KIM conveyed ownership of the 9330 to BIRKEY'S in consideration for the satisfaction of his $45,149.90 debt to CNH and a credit of $24,850.10 against the purchase price of the 9370. There is no indication that the 9330 was sold or otherwise liquidated – presumably, BIRKEY'S returned it to its inventory for resale as a used tractor. The Contract characterizes the $24,850.10 as a "Net Trade In Allowance" not a "Cash Down Payment." The only effect on CNH of the credit for the trade-in allowance was that since the purchase price of the 9370 was thereby reduced, the amount of its purchase money loan to KIM was equivalently reduced. Once its security interest was satisfied when the $45,149.90 loan balance was paid off, CNH had no further interest in the 9330.[1] The

---

[1] Presumably, the $45,149.90 loan balance was satisfied via a credit from BIRKEY'S to CNH, not a payment of money. The details of how the satisfaction occurred and was accounted for are not part of the record and are not material to the Motion for Summary Judgment. The possibility that CNH received any cash or non-cash value on account of the trade-in of the 9330, beyond the $45,149.90 payoff amount, is foreclosed by the uncontradicted assertions of Paul

amount of the trade-in allowance on the 9330 that BIRKEY'S agreed to give to KIM was between BIRKEY'S and KIM. Nothing in the record supports the proposition that the transaction in question generated proceeds from the 9330, much less that CNH received any proceeds.

Implicit in Plaintiff's arguments is that the trade-in of the 9330 was wrongful or in violation of its rights as a secured party. While, under certain circumstances, a debtor acts unlawfully by disposing of collateral without paying the secured party, *see* 810 ILCS 5/9-315.01, an allegation not made by Plaintiff, there is no similar provision in Article 9 that imposes liability on a party in the position of CNH as a different secured party. The mere existence of a security interest does not subject a secured party to liability in contract or tort for the debtor's acts or omissions. 810 ILCS 5/9-402. Plaintiff fails to identify any legal duty that CNH owed to it with respect to the transaction in question. The Plaintiff had no contractual relationship with CNH. Plaintiff points to no statute giving rise to any duty. In fact, the Second Amended Complaint does not even allege the existence of a duty from CNH to Plaintiff or how CNH breached any such duty.

Even if the trade-in of the 9330 violated a covenant in KIM'S security agreement with Plaintiff, it had no effect on the priority rights of CNH. A debtor's unauthorized disposition of collateral does not affect the priority between competing security interests. *Deutz-Allis Credit Corp. v. Lynch Farms, Inc.*, 387 N.W.2d 593 (Iowa 1986). A borrower's covenant in a security agreement requiring prior authority for the disposition of collateral is only as valuable as compliance with it. *Id.* at 596. As pointed out by CNH, however, Plaintiff's security interest in the 9330 continued despite the trade-in, so that Plaintiff was

---

Lukridge.

no worse off, from an equity standpoint, than before.  *See John Deere Co., Inc. v. Production Credit Ass'n of Finger Lakes,* 1984 WL 178807 (N.Y.Sup. 1984).

Based upon the record before the Court, there is no question of material fact and CNH is entitled to judgment as a matter of law.  This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###